UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RADAR SPORTS MANAGEMENT, LLC,

                             Plaintiff,

                  -against-

LEGACY LACROSSE, LI INC, MADLAX INC dba
MADLAX EVENTS, TRUE LACROSSE, MICHAEL
BRENNAN, TRACEY CANTABENE, THOMAS
ZUMMO, MIKE GABEL, CABEL MADDUX, and JAKE
DEAN, each INDIVIDUALLY AND COLLECTIVELY
ACTING AS A JOINT VENTURE COLLECTIVELY
DOING BUSINESS AS CLUB NATIONAL,

                           Defendants.
-----------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
21-CV-5749 (JMW)

**A P P E A R A N C E S :**

John F. Clennan, Esq.
**Law Office of John F. Clennan**
2206 Ocean Avenue, P.O. Box 1143
Ronkonkoma, NY 11779
*Attorney for Plaintiff*

Jennifer E. Sherven, Esq.
Taylor Michelle Ferris, Esq.
**Kaufman Dolowich & Voluck, LLP**
135 Crossways Park Drive, Ste 201
Woodbury, NY 11797
*Attorneys for Defendants*
*True Lacrosse, Mike Gabel,*
*and Jake Deane*

Adam I. Kleinberg, Esq.
**Sokoloff Stern LLP**
179 Westbury Avenue
Carle Place, NY 11514
*Attorneys for Defendants*
*Legacy Lacrosse, LI, Inc.,*
*Madlax Inc., Michael Brennan,*
*Tracey Cantabene, Thomas Zummo,*
*and Cabel Maddux*

**WICKS,** Magistrate Judge:

This case arises from a passionate dispute related to youth travel lacrosse.  Plaintiff alleges that this dispute is rooted in something more nefarious, namely, racial discrimination. Plaintiff Radar Sports Management, LLC brings a five-count complaint ("Second Amended Complaint") against nine defendants -- Legacy Lacrosse, LI Inc., Madlax, Inc, True Lacrosse ("Corporate Defendants"), Michael Brennan, Tracey Cantabene, Thomas Zummo, Mike Gabel, Cabel Maddux, and Jake Deane ("Individual Defendants" and collectively with Corporate Defendants, "Defendants").  (DE 23.)  Plaintiff alleges racial discrimination in violation of section 1981, breach of contract, intentional interference with rights of a contract, and a violation of Public Accommodations Law, 42 U.S.C. § 1981; 42 U.S.C. § 2000a.  (DE 23.)  The Second Amended Complaint seeks both monetary and mandatory injunctive relief.

Before the Court are two motions to dismiss for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6) filed by: (1) True Lacrosse, Mike Gabel, and Jake Deane ("True Defendants"), and (2) Legacy Lacrosse, LI Inc., Madlax, Inc, Michael Brennan, Tracey Cantabene, Thomas Zummo, Cabel Maddux ("Legacy Defendants").  (DE 35; DE 44.)  True Defendants also move, in the alternative, to strike Plaintiff's request for compensatory and punitive damages pursuant to Fed. R. Civ. P. 12(f).  (DE 44.)  Plaintiff filed a single opposition to these motions, these motions raise many overlapping arguments, and both motions to dismiss seek dismissal of the Second Amended Complaint in its entirety.  (DE 38-3; DE 46 at 6 n.1 (noting only one opposition was served on both sets of Defendants).)  Accordingly, the Court addresses these motions together.

For the reasons stated herein, Defendants' motions to dismiss (DE 35; DE 44) are **GRANTED** in part and **DENIED** in part, and True Defendants' motion to strike is terminated as **MOOT**.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

## A.  Relevant Factual Background

The following allegations are drawn from Plaintiff's Second Amended Complaint and documents integral to it (*see infra*, II.B) and are assumed true for the purposes of the motion to dismiss.

Radar Sports Management, LLC is a 100% minority owned business that operates youth lacrosse teams.  (DE 23 at ¶ 1.)  Plaintiff's youth lacrosse teams consist of 25% minority players, which includes a large portion of black players.  (DE 23 at ¶¶ 7, 78.)  Plaintiff's coaching staff is more than 50% black.  (DE 23 at ¶ 8.)  Corporate Defendants, and Individual Defendants, collectively sponsor a travel lacrosse tournament called "Club National."  (DE 23 at ¶ 11.)  Defendants operate a website which seeks to engage travel lacrosse teams to participate in Club National.  (DE 23 at ¶ 23).  The Club National tournament was held in Austin-Tindall Sports Complex in Kissimmee, Florida between December 2021 and January 2021.  (DE 23 at ¶¶ 12, 34.)  Club National provides participating teams with the use of public parks, discounted hotel accommodations, and discounted tickets at public attractions.  (DE 23 at ¶ 26, 89.)

On or about May 3, 2021, Plaintiff allegedly entered into an electronic contract with Defendants, by signing up for Club National through the Club National website and by paying the registration fee.  (DE 23 at ¶¶ 33, 34.)  The purpose of Plaintiff registering for Club National was to field a team in the tournament.  (DE 23 at ¶ 34.)  The Club National website did not provide for any other conditions for participation in the tournament other than payment.  (DE 23 at  ¶¶ 24, 37.)  Defendants agreed to admit Plaintiff's teams into the tournament.  (DE 23 at ¶ 38.)  Plaintiff agreed to make the requested payment.  (DE 23 at ¶ 39.)  That same month,

Plaintiff allegedly entered into an agreement with Avanti Travel Group ("Avanti") to reserve a block of hotel rooms for Plaintiff's teams for Club National.  (DE 23 at ¶ 72.)

On September 20, 2021, Jake Deane along with other defendants allegedly breached the contract.  (DE 23 at ¶ 44.)  A series of emails were exchanged between September 15 and September 20, 2021 ("Email Chain") between some of the Individual Defendants, and Scott Heaney, Director of Events for Plaintiff.  (DE 44-3; DE 38-8.)  Cabel Maddux notified Plaintiff on September 20, 2021 that the Club National ownership group voted to refund Plaintiff, Plaintiff could not participate in Club National, and Maddux needed to cancel the hotel reservations.  (DE 44-3 at 3.)

Deane allegedly informed Plaintiff that its team was too good.   (DE 23 at ¶ 45.)  Jake Deane used the terms "daddy ball," "community," and "culture" in the emails explaining his decision.  (*See* DE 44-3.)  Plaintiff protested the decision.  (DE at ¶ 46.)  On or about October 8, 2021, Maddux contacted Avanti and had them cancel Plaintiff's hotel reservations.  (DE 23 at ¶ 73.)  Maddux at some point later "expressed" that the reason the rooms were cancelled was because the competition was "fulled up."  (DE 23 at ¶ 47.)

Plaintiff's Second Amended Complaint also comes to many conclusions including the following:  Plaintiff alleges Defendants breached their contract with Plaintiff "in order to commit an act of racial discrimination," "against young men of the black race who . . . seek to play lacrosse."  (DE 23 at ¶¶ 48, 54.)  Plaintiff was "subjected to treatment white citizens were not burdened with," and that Defendants' discriminatory animus stems from their fear of "minority intrusion on a white dominated sport."  (DE 23 at ¶¶ 51, 53.)  Plaintiff was denied the same right to contract to field a lacrosse team that white citizens or teams are afforded.  (DE 23 at ¶ 51.)  And Plaintiff's players were denied their rights to use parks, hotels, and places of public

amusement when Club National canceled Plaintiff's hotel reservations to make space for "the privileged caste[s] which defendants would prefer to deal with." (DE 23 at ¶ 63).

**B. Relevant Procedural Background**

Plaintiff commenced this action by filing a complaint on October 14, 2021. (DE 1.) Plaintiff then filed its First Amended Complaint as a matter of course on October 21, 2021. (DE 3.) Defendants sought a pre-motion conference to file their respective motions to dismiss, which Plaintiff opposed while simultaneously seeking leave to amend. (DE 14; DE 15; DE 16.) The Court denied Defendants' request for a pre-motion conference and granted Plaintiff leave to amend. (*See* Electronic Order dated Jan. 3, 2022.) An initial conference was held on January 21, 2022. (DE 21.)

On February 2, 2022, Plaintiff filed its third complaint in this action, the Second Amended Complaint. (DE 23.) Defendants renewed their request for a pre-motion conference (DE 25; DE 26) and a briefing schedule was set on the anticipated motions to dismiss. (*See* Electronic Order dated Feb. 8, 2022.) Defendants' subsequent motion to stay discovery (DE 30) was granted on April 1, 2022. (*See* Electronic Order dated Apr. 1, 2022.) Defendants then filed the subject motions (DE 35; DE 44), which Plaintiff opposes (DE 38). The parties consented to the undersigned on August 30, 2022 and the case was re-assigned accordingly. (DE 47; DE 48.)

## II.   <u>DEFENDANTS' MOTIONS TO DISMISS</u>

**A. Legal Standard Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

**B.  Conversion to Summary Judgment Pursuant to Rule 12(d)?**

As an initial matter, Plaintiff attaches certain documents to its opposition brief, and on that basis, requests that the Court treat the Defendants' motions to dismiss as for summary judgment pursuant to Rule 12(c).  (DE 38 at 1-2.)  The motions to dismiss were filed under Rule 12(b), and presumably, Plaintiff is referring to the conversion provision in Rule 12(d).  Where matters outside the pleadings are considered by the Court in deciding a motion to dismiss under

Rule12(b)(6), the Court treats the motion as one for summary judgment under Rule 56.  Fed R. Civ. P. 12(d).

The option to convert a motion to dismiss into one for summary judgment is in the court's discretion.  *Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015), *aff'd*, 674 F. App'x 45 (2d Cir. 2017).  Should a court choose to convert a motion to dismiss into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008).  This ordinarily means the court must give notice *before* converting the 12(b)(6) motion to dismiss to one for summary judgment.  *Id.*

While the court should give explicit notice of its intent to convert a motion to dismiss into a motion for summary judgment, it is not always necessary, especially where the parties should have reasonably recognized the possibility that the motion might be converted into one for summary judgment.  *Green v. Doukas*, No. 99-7733, 2000 WL 236471, at *2 (2d Cir. Feb. 15, 2000) (summary order).  This is often found where both parties submit extrinsic evidence in support of their positions.  *Id.*; *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss.").

The Court declines to convert Defendants' motions to dismiss into motions for summary judgment.  *See Gross Found., Inc. v. Goldner*, No. 12-CV-1496 (ILG), 2012 WL 6021441, at *5 (E.D.N.Y. Dec. 4, 2012) ("[E]ven where conversion is justified, a court may in its discretion choose not to.").  Defendants rely on the Second Amended Complaint and on documents

incorporated by reference in, or integral to it, except for one document discussed below.  (DE 35; DE 44.)  Since Defendants were not given a reasonable opportunity to present material relevant to a motion for summary judgment, conversion is not warranted.

Moreover, Defendants filed their motions to dismiss in lieu of their answer, little discovery has taken place, and Defendants have not requested conversion.  *See Giant Grp., Ltd. v. Sands*, 142 F. Supp. 2d 503, 506 (S.D.N.Y. 2001) ("Even where additional materials are submitted by one party, a trial court should not transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has been filed in lieu of an answer, and the parties have neither completed discovery nor formally requested that the motion be converted."); *see also Ceparano v. United States*, 798 F. Supp. 2d 462, 466 (E.D.N.Y. 2011) ("While there are legal grounds for converting a party's motion to dismiss into a motion by that party for summary judgment, the plaintiff cites to, and the Court is aware of, no authority permitting a party's motion to dismiss to be converted into a motion by the opposing party for summary judgment."), *appeal dismissed and remanded on other grounds*, 519 F. App'x 62 (2d Cir. 2013).

That said, it is well settled that in deciding a motion to dismiss under Rule 12(b)(6), a court can consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters of which judicial notice may be taken.  *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002).  Even if a document is not incorporated by reference, a court may nevertheless consider it when it is "integral" to the complaint, meaning the complaint relies heavily upon its terms and effect.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  However, it must be clear on the record that there is no dispute as to the document's authenticity, accuracy, or relevance.  *Id.*  Here, the Email Chain between, *inter alia*, Plaintiff's Director of Events, Scott

Heaney, and individual defendants, Jake Deane, and Cabel Maddux forms the basis of Plaintiff's

racial discrimination claim; the content of that chain is integral to Second Amended Complaint,

and its authenticity is undisputed.  (*See* DE 23; DE 44-3; DE 38-3 at 21 ("A fair reading of the

complaint and *the emails* upon which it is based . . . ." (emphasis added)).)  Accordingly, the

Court considers the Email Chain.

In their moving papers, True Defendants attached the terms and conditions for

registration listed on their website.  (DE 44-4.)  Plaintiff claims these were not present when it

registered for the tournament.  (DE 38-3 at 11.)  The document appears to be a screenshot taken

from a computer, and the date reflected on the computer is November 29, 2021, which is after

Plaintiff registered for the tournament on May 3, 2021.  (DE 44-4; DE 23 at ¶ 33.)  Given this

dispute, the Court excludes it from consideration on this motion.  The affidavits Plaintiff offers

to supplement the Complaint are also excluded.  (*see* DE 40-41; DE 39).  *Colliton v. Bunt*, No.

15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016) ("Courts ordinarily do not

consider factual assertions contained in affidavits submitted in . . . opposition to a motion to

dismiss . . . Moreover, a plaintiff generally may not amend its complaint through its opposition to

a motion to dismiss." (citation omitted)).

### C.  Section 1981 Claims

Plaintiff brings claims under Section 1981 of the Civil Rights Act of 1866 against all

Defendants.  (DE 23.)  *See* 42 U.S.C. § 1981.  Section 1981 prohibits, *inter alia*, racial

discrimination in the making and enforcement of private contracts .  *See Lauture v. Int'l Bus.*

*Machines Corp.*, 216 F.3d 258, 260 (2d Cir. 2000).  As amended by the Civil Rights Act of

1991, it also prohibits racial discrimination in the performance, modification or termination of

contracts.  *Id.* at 261 (citing 42 U.S.C. § 1981(b)).  Establishing a Section 1981 claim requires a

plaintiff to allege facts to support the following: "(1) that [plaintiff] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Id.* at 261. Section 1981 allows for individual liability. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("We now explicitly hold what was implicit in our previous cases: individuals may be held liable under § 1981").

The first element is presumably met here. Plaintiff's youth lacrosse teams consist of 25% minority players, which includes a large portion of black players, and has more than 50% black coaches. (DE 23 at ¶¶ 7, 78.) As to the third element, Plaintiff wishes to proceed under two theories, the "make and enforce contracts," theory and the "benefits clause" theory. As to the first theory, discriminatory conduct must have concerned Plaintiff's right "to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). Plaintiff alleges a contract existed between Plaintiff and Defendants to participate in Club National and between Plaintiff and Avanti for the hotels. (DE 23 at ¶¶ 33, 34, 72.) As to the second theory, discriminatory conduct must have deprived Plaintiff of "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

The law identified by Plaintiff is the Public Accommodations Law, Title II of the Civil Rights Act of 1964, and similar state statutes. (*See* DE 23 at ¶¶ 59-70; DE 38-3 at 14.) The Public Accommodations Law secures the right to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion or national origin." 42 U.S. Code § 2000a(a). Plaintiff alleges that it was deprived of its right to use the hotels because Defendants cancelled its reservations. (DE 23 at ¶¶ 58-70.) Assuming for

the purpose of this analysis that Plaintiff had cognizable contracts with Defendants and with Avanti, Plaintiff must still plausibly plead the second element -- intentional racial discrimination -- to make out a section 1981 claim.

"To survive a motion to dismiss, a plaintiff must specifically allege the circumstances giving rise to a plausible inference of racially discriminatory intent." *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (internal quotation marks omitted). This requires more than "naked allegation[s]" that the defendant "acted based on the plaintiff's race and color" which are "too conclusory to survive a motion to dismiss." *Id*. In evaluating circumstantial evidence of intentional discrimination, Section 1981 claims are evaluated under *the McDonnell Douglas* burden-shifting framework under which, as relevant here, Plaintiff carries the initial burden of pleading a *prima facie* case of discrimination. *Taylor v. New York City Fresh Mkt.*, No. 19-CV-4797 (EK) (LB), 2020 WL 10356230, at *6 (E.D.N.Y. Dec. 23, 2020), *report and recommendation adopted,* 2021 WL 2940832 (E.D.N.Y. July 13, 2021).

"Plaintiff's initial burden to identify circumstances giving rise to an inference of discrimination on the basis' of race is minimal, and such an inference arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated." *Id*. at *6 n.12 (internal quotation marks omitted). However, the Second Circuit has "emphasize[d] that an essential element to [a 1981] cause of action is a requirement that the alleged discrimination took place *because of* the individual's race." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (emphasis added). Even at the pleading stage, plaintiff must plausibly allege but-for causation. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, ___ U.S. ___ , 140 S. Ct. 1009, 1014-17 (2020).

Plaintiff summarily concludes that racial discrimination is in the air.  For example, Plaintiff claims Defendants breached their contract with Plaintiff "in order to commit an act of racial discrimination," "against young men of the black race who . . . seek to play lacrosse."  (DE 23 at ¶¶ 48, 54.)  And Plaintiff was "subjected to treatment white citizens were not burdened with," and Defendants' discriminatory animus stems from their fear of "minority intrusion on a white dominated sport."  (DE 23 at ¶¶ 51, 53.)  These kinds of allegations are littered across the Second Amended Complaint, lack factual support, are wholly insufficient to raise an inference of racial discrimination.

Plaintiff hinges its racial discrimination inference on only a handful of facts.  First, Plaintiff alleges that Deane's proffered "excuse or pretext" for excluding the team from Club National was that Plaintiff's team "was too good."  (DE 23 at ¶ 45.)  In its opposition brief, Plaintiff latches onto certain terms used by Deane in the Email Chain with Plaintiff regarding its exclusion from Club National.  Plaintiff represents that Deane stated that he excluded the team because they "engaged in 'daddy ball' in a sport that encourages 'culture' and 'community.'"  (DE 38-3 at 8-9.)[1]  In particular, Plaintiff takes great offense to the use of the terms "community" and "culture" in Deane's September 15, 2021 email.  These remarks, according to Plaintiff, are coded terms -- meant to be understood by some and not all -- and "bespeak[] the discriminatory intent."  (DE 38-3 at 9.)

A sober reading of the Email Chain reflects otherwise.  None of these terms read in context of the Email Chain plausibly raise an inference of racial discrimination or indicate that

---

[1] Plaintiff mischaracterizes the Email Chain, Deane does not make this particular statement, and these words were used throughout different emails.  (*See* DE 44-3.)  Moreover, the word "community" is not found in the Email Chain provided by the parties.  Deane references "continuity" in the same sentence as "culture," which is perhaps what Plaintiff is referring to.  However, some words in the document are cut off, so for the purpose of this motion, the Court infers in Plaintiff's favor that the word "community" was used.  (*See id*.)

Plaintiff was excluded from Club National *because of* the race of its players.  Rather, the Email

Chain reflects that "Club National," especially Deane, disagreed with Plaintiff's recruitment

practices and business model.  (*See* DE 44-3.)  In relevant part, Deane asks Plaintiff whether its

players are "mercenaries that just randomly show up to events and play with each other not

knowing anyone . . . or are you trying to start an actual program with *continuity, culture* and buy

in with the families you have involved."  (DE 44-3 at 4. (emphasis added).)  Deane then tells

Plaintiff that "[r]ight now you are not a program. You are a tournament team. We don't want

tournament teams in this event."  (*Id.*)

Deane also states that he had no issues with Plaintiff, which has participated in Club

National before, "until [he] played [its] 2022 Team this past summer in Philly."  Deane states: "It

was daddy ball at its finest and there was no substance to what you guys were doing."  (DE 44-3

at 4.)  Deane further notes: "You could tell it was not about making the kids better and it was all

about those dads who were coaching the team making sure their kid could win a championship.

The kids on your team didn't even know who they were playing with and who their teammates

were." (*Id.*)

The "culture" Deane refers to is a sports culture, specifically that of Plaintiff's lacrosse

program.[2]  There are no racial undertones, remarks or actions that might give rise to a plausible

inference of discrimination.  *Cf. Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC,*

No. 11-CV-3327, 2013 WL 417406, at *10 (S.D.N.Y. Feb. 4, 2013) (finding that, *inter alia*,

comments that Plaintiff's bar was a "black bar," referring to plaintiff's patrons as "them" or

"they," referring to the bar as a "nig fest," combined with other actions were sufficient to support

a 1981 claim); *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (finding, *inter alia*,

---

[2]  All-American Jim Brown, widely considered to be one of top players to grace the lacrosse field once
said: "When you need a friend, you can always count on your teammates."

comments about "blacks on welfare" and "I'm tired of black people taking taxes" sufficient to give rise to an inference of discriminatory intent). Plaintiff has also competed in Club National before and the Email Chain reflects, as Plaintiff's Director of Events writes, "Jake's concerns with us are personal with our club director," alluding to a pre-existing issue between Deane and the club director (DE 44-3 at 2). *See Tellock v. Davis,* 02-CV-4311 No. 02-CV-4311 (FB), 2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002) (finding lack of causation where defendant renewed plaintiff's lease in the past and had a previous relationship without incidents or statements suggesting any kind of racial discrimination), *aff'd,* 84 Fed. App'x 109 (2d Cir. 2003); *Hicks*, 44 F. Supp. 2d at 598 ("[A] complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination.").

In this regard, all words must be carefully read and considered in context, as they could easily take on different meanings depending on the circumstances. "Judge Learned Hand once wrote that 'words are chameleons, which reflect the color of their environment.'" *Commissioner v. National Carbide Corp.*, 167 F.2d 304, 306 (2d Cir. 1948). "That was hardly news to generations of lawyers and judges, many of whom have learned, often at some cost, that the same language, used in different settings, may mean very different things." *Hanover Ins. v. U.S.,* 880 F.2d 1503, 1504 (1st Cir. 1989).

Whatever reasons Defendants had for excluding Plaintiff, right or wrong, Plaintiff has not alleged, nor does the Email Chain reflect, any facts plausibly giving rise to an inference of racial animus or a causal link between the race of Plaintiff's players and the decision to exclude Plaintiff from Club National. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) ("[Plaintiff] has alleged no facts concerning 'other indicia of discrimination' that

would make [defendant's] remarks 'bear a more ominous significance.' (internal quotation marks omitted)).

Next, Plaintiff states that Maddux provided inconsistent explanations for why he cancelled Plaintiff's hotel reservations after Club National voted to exclude Plaintiff from the competition.  (DE 38-3 at 7.)  Plaintiff, in its opposition brief, argues that Maddux previously said he requested the cancellation to save the players' parents money after Plaintiff was voted out of Club National.  (DE 38-3 at 7.)  Plaintiff alleges that Maddux later "expressed the cause or pretext that the tournament was fulled [*sic*] up."  (DE 23 at ¶ 47.)  The former is not alleged in the Second Amended Complaint, and the Email Chain lucidly reflects that Maddux notified Plaintiff via email that Club National's ownership group voted to refund Plaintiff in full and needed to cancel the hotel reservations.  (DE 44-3 at 3.)  Plaintiff simply concludes this was done to "devote these spaces to the privilege caste which defendants would prefer to deal with."  (DE 23 at ¶ 63.)  Though inconsistent explanations for a course of action can give rise to an inference of discrimination in certain contexts, here, there is no relevant inconsistency and no such inference is plausible.

That Maddux stated that the requested cancellation would save the players' parents money, and then *later*, stated that the tournament had now "fulled up," is not inconsistent.  Even so, that inconsistency is hardly meaningful or relevant with respect to the adverse actions claimed by Plaintiff.  The Email Chain reflects that Maddux cancelled the reservations *because* Plaintiff was no longer part of the tournament.  S*ee Avent v. Progressive Cas. Ins. Co.,* No. 19-CV-10907 (JGK), 2021 WL 168500, at *12 (S.D.N.Y. Jan. 19, 2021) (noting the non-discriminatory explanations mentioned in the complaint and finding that defendants' "benign

explanations belie a plausible inference that race was a but-for cause of the defendants'
conduct").

Plaintiff was informed it was voted out of the tournament based on its business model
and recruitment practices, that it was refunded the registration fee, and thus, the hotel
reservations needed to be cancelled.  (*See* DE 44-3 at 3 ("Now we also need to cancel your hotel
reservations in your block? None of the families have been charged so there are no refunds
necessary. Just let me know.").  Plaintiff simply alleges no facts in relation to the hotel
cancellation that connect the dots between the complained of action and the race of Plaintiff's
players.  *See Payne v. Malemathew,* No. 09-CV-1634 (CS), 2011 WL 3043920, at *3 n.4
(S.D.N.Y. July 22, 2011) (finding complaint failed to meet the plausibility standard where, *inter
alia*, plaintiff "sets forth not a single example of statements disparaging a protected class or any
other reason to believe that anything that happened to him was based on his membership in such
a class.").

Moreover, "plaintiff must allege at least one instance in which he was treated differently
from a similarly situated non-minority." *Hu v. City of New York*, 927 F.3d 81, 86 (2d Cir. 2019).
Here, Plaintiff makes bold accusations that Defendants sought to give preferential treatment to
non-minorities.  Yet, Plaintiff does not point to any facts allowing the Court to reasonably infer
that a similarly situated non-minority team was allowed to participate in the tournament or that
the cancelled hotel rooms were given to non-minority teams.  In fact, Plaintiff does not even
allege any instance in which a similarly situated non-minority player or team was treated
differently than Plaintiff.

Plaintiff's Second Amended Complaint draws many conclusions but offers little facts to
support them.  It suffers from a "common (and patently defective) pleading technique in cases

16

brought under federal and antidiscrimination statutes: 'I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)." *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2010). "As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination." *Id.* (citing *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231 (2d Cir. 2002)). The otherwise innocuous facts Plaintiff does allege are insufficient to carry Plaintiff's allegations into the realm of plausibility. *See Ochei*, 2011 WL 744738, at *3 (dismissing *pro se* pleading that failed to "manifest[] any form of racial animus discriminatory words, prior incidents or other indications that race played a role in [the employer's] decision" (internal quotation marks omitted).).

Plaintiff cites to cases that are either inapposite or do not lend its argument any support. *See, e.g.*, *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP, No*. 21-CIV-02512 (CM), 2022 WL 524551, at *8 (S.D.N.Y. Feb. 22, 2022) (adequately pleading an inference of discriminatory motive where plaintiff alleged, with examples, that similarly situated non-minority co-workers were treated more favorably); *Yang v. Dep't of Educ. of the City of New York*, No. 14-CV-7037 (SLT) (RLM), 2016 WL 4028131, at *7 (E.D.N.Y. July 26, 2016) (adequately plead racial discrimination claim where plaintiff's supervisor frequently made derogatory and humiliating remarks about her accent and pointed out that she was Chinese); *Dinkins v. Suffolk Transp. Servs.*, No. 07-CV-3567 (JFB) (AKT), 2009 WL 303452, at *7 (E.D.N.Y. Feb. 9, 2009) (summary judgment on gender discrimination claim inappropriate where, *inter alia*, plaintiff alleged facts and offered evidence that created genuine issue of fact regarding whether similarly situated females were given more favorable treatment); *Abramson v. William Paterson Coll. of New*

17

*Jersey*, 260 F.3d 265, 278 (3d Cir. 2001) (noting that code words such as "all of you" and "one of them" can be sufficient to show an intent to discriminate); *Hamad v. Nassau Cnty. Med. Ctr.*, 191 F. Supp. 2d 286, 301 (E.D.N.Y. 2000) (adequately plead denial of privileges based on racially discriminatory animus where, *inter alia*, plaintiff was specifically replaced by a non-minority physician and other non-minority physicians were not disciplined for similar conduct); *Adames v. Mitsubishi Bank, Ltd.,* 751 F. Supp. 1548, 1562 (E.D.N.Y. 1990) (summary judgment on racial discrimination claim inappropriate where, *inter alia*, issues of fact regarding whether the subject employment practices were based on plaintiffs' being "American," or based on them being "non-Oriental").

In short, Plaintiff points to no remarks or circumstances that give rise to a plausible inference that race played a factor in Defendants' decision-making process, let alone that race was the but-for cause of Defendants' actions.  *See Mears v. Allstate Indem. Co.*, 336 F. Supp. 3d 141, 151 (E.D.N.Y. 2018) (dismissing section 1981 claim where plaintiff "offer[ed] no facts that indicate that race played any factor in the Defendants' [decision].").

As such, Plaintiff fails to state a claim under section 1981, and the second and third counts of the Second Amended Complaint are hereby dismissed.

**D.  Public Accommodations Law Claim**

Plaintiff's fourth count is anchored by the Public Accommodations Law, Title II of the Civil Rights Act of 1964, which secures the right to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion or national origin." 42 U.S. Code § 2000a(a).  The same analysis is applicable to section2000a(a) claims as to section 1981 claims.  *See Stone v. New York Pub. Libr.*, No. 05-CV-

10896 (DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008), *aff'd*, 348 F. App'x 665 (2d Cir. 2009); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 106 (2d Cir. 2001) ("For the same reasons that the plaintiffs can not prevail on their § 1981 claims, they can not do so under § 2000a.").

"It is well-settled that a plaintiff alleging a violation of Section 2000a must allege facts which show [she] was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent." *Macer v. Bertucci's Corp.,* No. 13-CV-2994 (JFB) (ARL), 2013 WL 6235607, at *8 (E.D.N.Y. Dec. 3, 2013) (internal quotation marks and citations omitted). Thus, Plaintiff's Public Accommodations Law claim fails for the same reasons as its section 1981 claims.

Nonetheless, as applicable here, where state or local remedies are available, Plaintiff cannot bring a civil action "before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority . . . ." 42 U.S.C. § 2000a–3(c); *see e,g, Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *6 & n.9 (S.D. Fla. Aug. 30, 2021) (noting that the Florida Civil Rights Act, § 760.08 has the same relevant protections as Title II), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CV-60723 (RAR), 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021). The Second Amended Complaint is devoid of any allegation related to the exhaustion requirements. (*See* DE 23.) In its opposition brief, Plaintiff states that administrative exhaustion is excused by frustration, which here the Plaintiff appears to argue is attributable to the diversity of citizenship between the parties. (DE 44-3.)

Plaintiff paints the picture that the diversity of citizenship of the parties makes it unlikely that any state would "welcome a complaint from this complainant" and that, for example, "[t]o

Floridians, this is a dispute among outsiders." (DE 44-3.) Unsurprisingly, Plaintiff cites no relevant authority for this proposition. (DE 44-3.) Instead, Plaintiff relies on two cases that do not involve Title II and are nonetheless inapposite. *See Sonne v. Bd. of Trustees of Vill. of Suffern*, 67 A.D.3d 192, 193, 887 N.Y.S.2d 145 (2d Dep't 2009) (finding exhaustion not required since plaintiff was challenging the defendants' action on constitutional grounds); *Lehigh Portland Cement Co. v. New York State Dep't of Env't Conservation*, 87 N.Y.2d 136, 141, 661 N.E.2d 961, 638 N.Y.S.2d 388 (1995) (finding resorting to administrative remedies would be futile based on the evidence presented regarding the administrative agency's long-standing policy).

All Plaintiff had to do was give written notice to the appropriate state or local agency and then wait thirty days before filing suit in federal court even if, as Plaintiff asserts, no agency would have welcomed its complaint. No such notice was given. Accordingly, Plaintiff fails to state a claim under section 2000a(a). *See Whitehurst v. 230 Fifth, Inc.*, No. 11-CV-0767 (CM), 2011 WL 3163495, at *9 (S.D.N.Y. July 26, 2011) (dismissing section 2000a claim for failure to exhaust administrative remedies). The fourth count of the Second Amended Complaint is hereby dismissed.

### E.  Leave to Amend -- Federal Claims

Embedded in Plaintiff's opposition brief is a request for leave to amend its Second Amended Complaint if Defendants' motions to dismiss are granted. With respect to the federal claims that request is denied. Rule 15(a) permits a party to amend their pleading once as a matter of right within the earlier of 21 days after service of the pleading, 21 days after service of a responsive pleading if applicable, or 21 days after a Rule 12(b), (e), or (f) motion. *See* Fed R. Civ. P. 15(a)(1). A party may also receive leave to amend with the opposing party's written

consent, or with the court's leave.  *See* Fed R. Civ. P. 15(a)(2).  "The court should freely give

leave when justice so requires."  *See* Fed R. Civ. P. 15(a)(2).

However, the Court may deny leave to amend where amendment would be futile.

*Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 265 (E.D.N.Y. 2013).  "Leave

to amend may also be denied where previous amendments have not cured the complaint's

deficiencies."  *Garcia v. Paylock*, No. 13-CV-2868 (KAM), 2014 WL 298593, at *8 (E.D.N.Y.

Jan. 28, 2014).  It may further be denied where no showing has been made that leave to replead

would cure said deficiencies.  *See Goodrich v. Long Island R.R. Co.,* 654 F.3d 190, 200 (2d

Cir.2011) ("[W]ithout any showing that the deficiencies in the complaint could be cured, we

must conclude that repleading would be futile.").

Plaintiff has neither made a proper motion to amend or offered a proposed amendment.

*See Corsini v. Nast*, 613 F. App'x 1, 4 (2d Cir. 2015) ("It is within the court's discretion to deny

leave to amend implicitly by not addressing the request when leave is requested informally in a

brief filed in opposition to a motion to dismiss." (internal quotation marks and citations

omitted)); *Klein v. Forster & Garbus, LLP*, No. 19-CV-06164 (DLI) (RML), 2021 WL 2646334,

at *5 (E.D.N.Y. June 28, 2021) ("Additionally, Plaintiff's failure to submit a proposed amended

complaint provides justifiable grounds upon which the Court may deny his request.").

Plaintiff merely states: (1) "Alternatively, plaintiff would request another opportunity to

amend the complaint." (DE 38-3 at 2.); and (2) "The motion should be denied or in the

alternative leave should be granted to amend the complaint."  (DE 38-3 at 23 (citing *Mian v.

Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).)  Plaintiff offers no

explanation whatsoever as to why a third amendment, and what would be the fourth complaint

filed in this action, is warranted.  *See Corsini*, 613 F. App'x at 4 ("[Plaintiff]" merely raised the

prospect of a second amendment in his opposition to the motion to dismiss. The district court did

not abuse its discretion by not addressing this vague allusion to a possible second amendment.");

*Murray v. New York*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009) ("If the movant's papers

adequately explain the basis for, and nature of, the proposed amendment, however, the failure to

attach a proposed amended complaint to the motion is not necessarily fatal.").

Plaintiff offers a lone citation to *Mian*, where the Second Circuit vacated the district

court's dismissal and remanded to allow a *pro se* plaintiff to amend his complaint.  *Mian v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d at 1087 (noting leave to amend should have

been granted "especially because this complaint was filed by a *pro se* plaintiff").  Though the

nature of the Second Amended Complaint resembles the complaint in *Mian* insofar as it more or

less "fails to offer more than conclusory allegations," of racial discrimination, Plaintiff is

represented by counsel here.  No special consideration here is warranted.

Though the Court may decline to grant leave to replead for the aforementioned reasons

alone, a review of the Second Amended Complaint, Plaintiff's opposition brief, and the affidavits

offered in support (DE 39-41), strongly suggests that any further leave to replead would not lead

to factual allegations sufficient to sustain Plaintiff's federal claims.  Given Plaintiff's prior

amendments, and the fact that there do not seem to be any further relevant facts or legal theories

Plaintiff could assert to support its federal claims if granted leave to replead, the Court declines

to grant any further leave to replead beyond the three pleadings filed to date.  *See City of Pontiac*

*Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (holding the

district court did not err in denying leave to replead where plaintiffs already had one opportunity

to amend their complaint and had "identified no additional facts or legal theories—either on

appeal or to the District Court—they might assert if given leave to amend"); *Perry v. Sony*

*Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006) ("Because [Plaintiff] was already afforded an opportunity to cure the deficiencies of his initial complaint and failed to do so in the amended complaint, the Court deems it appropriate not to grant any further leave to replead").

### III.    PLAINTIFF'S REMAINING STATE LAW CLAIMS

The Second Amended Complaint ties Plaintiff's first and fourth counts, breach of contract and intentional interference with contract, to supplemental jurisdiction, and diversity jurisdiction.  (*See* DE 23 at ¶¶ 84-85 (predicating jurisdiction over non-federal claims on 28 U.S.C. 1367 and 28 U.S. § 1332).)  The Court declines to exercise supplemental jurisdiction over the state law claims and Plaintiff failed to adequately plead diversity jurisdiction.

#### A.  Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), it is in the Court's discretion to decline to exercise supplemental jurisdiction over state claims when all claims over which it had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  "When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims."  *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988); *J.L. v. E. Suffolk Boces*, 113 F. Supp. 3d 634, 649 (E.D.N.Y. 2015) ("The Defendant is correct that courts in this Circuit routinely decline to exercise supplemental jurisdiction over state law claims where they have dismissed all of the federal law claims in the action."); *see also Dudley v. Singas*, No. 16-CV-1548 (JMA) (AYS), 2017 WL 5312131, at *3 (E.D.N.Y. Nov. 13, 2017) (dismissing plaintiff's federal claims and declining to exercise supplemental jurisdiction over plaintiff's state-law negligence claim); *Rosato v. New York Cnty. Dist. Attorney's Off.*, No. 09-CV-3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14,

2009) (dismissing plaintiff's federal claim and declining to exercise supplemental jurisdiction over plaintiff's state-law claims).

Here, where all of Plaintiff's federal claims do not survive, it does not serve "judicial economy, convenience, fairness, and comity" for the Court to retain jurisdiction over any of Plaintiff's state law claims.  *See Catzin v Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018).  While this case has been pending since October 2021, the case has not proceeded far past the pleading stage.  A scheduling order was entered on January 21, 2022 (DE 22), by March 31, 2022 initial discovery requests had not been exchanged (DE 31), and this case has been stayed since April 1, 2022.  (*See* Electronic Order dated Apr. 1, 2022.)

Considering the posture of this case, it would not inconvenience the parties to litigate Plaintiff's state-law claims in state court.  *Cf. Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (affirming the district court's exercise of supplemental jurisdiction where "[b]y the time the federal claims were dismissed, the case had been before the district court for over six years . . . . discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial.").  Given the dismissal of Plaintiff's federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### B.  Diversity Jurisdiction

Plaintiff's Second Amended Complaint also references diversity jurisdiction pursuant to 28 U.S.C § 1332 but fails to plead it.  (DE 23.)  Federal courts have subject matter jurisdiction over state law claims when opposing parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d

42, 48 (2d Cir. 2012).  Exercising diversity jurisdiction requires complete diversity such that there is no overlap between the citizenship of any plaintiff with that of any defendant.

This case involves 10 parties, a mix of individuals and types of business entities.  "A person is deemed a citizen of the state wherein he or she is domiciled at the time the complaint is filed."  *DeAngelis v. Am. Airlines, Inc.*, No. 06-CV-1967 (NGG), 2009 WL 3762651, at *1 (E.D.N.Y. Nov. 10, 2009).  "[A] corporation shall be deemed to be a citizen of any State by . . . where it has its principal place of business."  *Id.*  "The citizenship of a corporation is determined by its place of incorporation and its principal place of business."  *Bank of Am., NA v. Pushing Grey - Off.*, No. 1205748, No. 11-CV-1191 (DRH) (ARL), 2019 WL 4736720, at *4 (E.D.N.Y. Sept. 27, 2019).

 For the purposes of determining diversity, "a limited liability company . . . takes the citizenship of each of its members."  *Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 49.  "If any of an LLC's members are themselves non-corporate entities, then a [party] must allege the identity and citizenship of their members, proceeding up the chain of ownership until the [party] has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC."  *136-61 Roosevelt LLC v. Starbucks Corp.*, No. 21-CV-3560 (BMC), 2021 WL 2779287, at *1 (E.D.N.Y. July 2, 2021) (alterations in original) (internal quotation marks omitted).

 Plaintiff is a limited liability company organized under the laws of Pennsylvania with its principal place of business in North Carolina.  (DE 23 at ¶ 15.)  However, Plaintiff has not pled the citizenship of each of its members.  *Id.* ("[T]he party seeking to invoke the court's diversity jurisdiction must identify both the LLC's members and their citizenship.").  Nor has Plaintiff identified the corporate form of Defendant True Lacrosse.  The Second Amended Complaint

simply states in relevant part that True Lacrosse "is a business organization with its principal place . . . located at 131 North Eisenhower Lane, Lombard, IL 60148." (DE 23 at ¶ 17.) This is insufficient to determine complete diversity. Plaintiff has not established that this Court possesses diversity jurisdiction over this action.[3]

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (DE 35; DE 44) are granted in part and denied in part as follows: (1) Defendants' motions to dismiss are granted as to the Second, Third, and Fifth counts of Plaintiff's Second Amended Complaint, which are dismissed with prejudice, and (2) Defendants' motions to dismiss as to the First and Fourth counts of Plaintiff's Second Amended Complaint are denied with leave to renew. Further, True Defendants' motion to strike Plaintiff's request for compensatory and punitive damages pursuant to Fed. R. Civ. P. 12(f) is denied as moot (DE 44), and Plaintiff's request for leave to replead its federal claims (DE 42) is denied.

As to the state law claims (the First and Fourth counts), Plaintiff is granted *limited* leave to replead facts supporting diversity jurisdiction, *i.e.* the citizenship of the parties and the amount in controversy.

Dated:  Central Islip, New York
          March 24, 2023

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

---

[3] The Court notes that Legacy Defendants' reply brief further indicates that diversity jurisdiction is in dispute in this case. (*See* DE 43 at 5 ("But this matter is in federal court because of federal question jurisdiction, not diversity jurisdiction"); *Id*. ("This case is in federal court right now because of federal question jurisdiction.").)