**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
RADAR SPORTS MANAGEMENT, LLC,

               *Plaintiff*,

           -against-

LEGACY LACROSSE, LI INC, MADLAX INC dba
MADLAX EVENTS, TRUE LACROSSE, MICHAEL
BRENNAN, TRACEY CANTABENE, THOMAS
ZUMMO, MIKE GABEL, CABEL MADDUX, and JAKE
DEANE, each INDIVIDUALLY AND COLLECTIVELY
ACTING AS A JOINT VENTURE COLLECTIVELY
DOING BUSINESS AS CLUB NATIONAL,

               *Defendants*.
-------------------------------------------------------------X

**OPINION**
**AND ORDER**

21-CV-5749 (JMW)

**A P P E A R A N C E S:**

John F. Clennan, Esq.
**Law Office of John F. Clennan**
2206 Ocean Avenue, P.O. Box 1143
Ronkonkoma, NY 11779
*Attorney for Plaintiff*

Jennifer E. Sherven, Esq.
Taylor Michelle Ferris, Esq.
**Kaufman Dolowich & Voluck, LLP**
135 Crossways Park Drive, Ste 201
Woodbury, NY 11797
*Attorneys for Defendants*
*True Lacrosse, Mike Gabel,*
*and Jake Deane*

1

Adam I. Kleinberg, Esq.
**Sokoloff Stern LLP**
179 Westbury Avenue
Carle Place, NY 11514
*Attorneys for Defendants*
*Legacy Lacrosse, LI, Inc.,*
*Madlax Inc., Michael Brennan,*
*Tracey Cantabene, Thomas Zummo,*
*and Cabel Maddux*

**WICKS,** Magistrate Judge:

This case arose out of a contractual dispute when Plaintiff, operator of a business managing youth travel lacrosse teams, was foreclosed from participating in a Club National tournament, claiming Defendants – who sponsor Club National -- breached their agreement.  At bottom, the question is whether, as a matter of law, a contract exists.

Plaintiff, Radar Sports Management, LLC, filed a five-count complaint ("Second Amended Complaint") against nine defendants – Legacy Lacrosse, LI Inc., Madlax, Inc, True Lacrosse, Michael Brennan, Tracey Cantabene, Thomas Zummo, Mike Gabel, Cabel Maddux, and Jake Deane (collectively, "Defendants") – alleging: (i) breach of contract; (ii) failure to afford Plaintiff the right to contract in violation of section 1981; (iii) depriving Plaintiff of the full and equal benefits guaranteed by law in violation of section 1981; (iv) intentional interference with rights of a contract; and (v) a violation of Public Accommodations Law, 42 U.S.C. § 1981; 42 U.S.C. § 2000a. (ECF No. 23.)

Defendants True Lacrosse, Mike Gabel, and Jake Deane ("True Defendants"), and Legacy Lacrosse, LI Inc., Madlax, Inc., Michael Brennan, Tracey Cantabene, Thomas Zummo, and Cabel Maddux ("Legacy Defendants"), filed two motions to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (*See* ECF No. 35,44.) This Court granted Defendants' motions to dismiss with prejudice with respect to the Second, Third, and

Fifth counts of Plaintiff's Second Amended Complaint, and denied Defendants' motions to dismiss as to the First and Fourth counts with leave to renew (ECF No. 49.) As to the state law claims (the First and Fourth counts), this Court granted Plaintiff *limited* leave to replead facts supporting diversity jurisdiction, *i.e.,* the citizenship of the parties and the amount in controversy, (*id.*), and subsequently directed Plaintiff to file a Fourth Amended Complaint removing the causes of action that were previously dismissed, (Electronic Order dated June 2, 2023).

Plaintiff filed its Fourth Amended Complaint on June 7, 2023, alleging: (i) breach of contract; and (ii) intentional interference with the rights of contract as against True Defendants and Legacy Defendants (ECF No. 59), who collectively filed a Motion to Dismiss Plaintiff's Fourth Amended Complaint in response on September 22, 2023 (ECF No. 63-65). Now before the Court is: (i) Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint; (ii) Plaintiff's Memorandum in Opposition of Defendant's Motion (ECF No. 65); and (iii) Defendants' Reply to Plaintiff's Opposition (ECF No. 67).

For the reasons stated below, Defendants' Motion to Dismiss (ECF No. 63-65) is granted in its entirety.

## I.  **FACTUAL AND PROCEDURAL BACKGROUND**

### A.  **Relevant Factual Background**

The following allegations are drawn from Plaintiff's Fourth Amended Complaint and documents integral to it (*see infra*, II.B) and are assumed true for the purposes of the motion to dismiss.

Radar Sports Management, LLC is a business that operates youth travel lacrosse teams nationwide. (ECF No. 59 at ¶ 1.) True Defendants and Legacy Defendants collectively sponsor a travel lacrosse tournament called "Club National." (*Id.* at ¶ 13.) Defendants operate a website

3

which seeks to engage travel lacrosse teams to participate in Club National. (*Id.* at ¶ 41). The Club National tournament was held in Austin-Tindall Sports Complex in Kissimmee, Florida between December 2021 and January 2021. (*Id.* at ¶ 14.) Club National provides participating teams with the use of public parks, discounted hotel accommodations, and discounted tickets at public attractions. (*Id.* at ¶ 44.)

On or about May 3, 2021, Plaintiff allegedly entered into an electronic contract with Defendants, by signing up for Club National through the Club National website and by paying the registration fee. (*Id.* at ¶¶ 51, 57.) The purpose of Plaintiff registering for Club National was to field a team in the tournament. (ECF No. 59 at ¶ 52.) The Club National website did not provide for any other conditions for participation in the tournament other than payment. (*Id.* at ¶ 55.) Defendants allegedly agreed to admit Plaintiff's teams into the tournament. (*Id.* at ¶ 56.) Plaintiff agreed to make the requested payment. (*Id.* at ¶ 59.)

That same month, Plaintiff allegedly entered into an agreement with Avanti Travel Group ("Avanti") to reserve a block of hotel rooms for Plaintiff's teams for Club National. (*Id.* at ¶ 73.) On September 20, 2021, Jake Deane ("Deane"), along with other defendants, allegedly breached the contract. (*Id.* at ¶ 62.) Deane allegedly informed Plaintiff that its team was "too good," (*id.* at ¶ 63), and Plaintiff protested the decision, (*id.* at ¶ 64). On or about October 8, 2021, Cabel Maddux ("Maddux") contacted Avanti and had them cancel Plaintiff's hotel reservations. (*Id.* at ¶ 74.) Maddux at some point later "expressed" that the reason the rooms were cancelled was because the tournament was "filled up." (*Id.* at ¶ 65.)

**B. <u>Relevant Procedural Background</u>**

Plaintiff commenced this action by filing a Complaint on October 14, 2021. (ECF No. 1.) Plaintiff then filed its First Amended Complaint as a matter of course on October 21, 2021. (ECF

4

No. 3.) Defendants sought a pre-motion conference to file their respective motions to dismiss, which Plaintiff opposed while simultaneously seeking leave to amend. (ECF Nos. 14, 15, 16.) The Court denied Defendants' request for a pre-motion conference and granted Plaintiff leave to amend. (*See* Electronic Order dated Jan. 3, 2022.) An initial conference was held on January 21, 2022. (ECF No. 21.)

On February 2, 2022, Plaintiff filed its third complaint in this action, the Second Amended Complaint. (ECF No. 23.) Defendants renewed their request for a pre-motion conference (ECF Nos. 25, 26) and a briefing schedule was set on the anticipated motions to dismiss. (*See* Electronic Order dated Feb. 8, 2022.) Defendants' subsequent motion to stay discovery (ECF No. 30) was granted on April 1, 2022. (*See* Electronic Order dated Apr. 1, 2022.) Defendants then filed a motion to dismiss Plaintiff's Second Amended Complaint, (ECF Nos. 35; 44), which Plaintiff opposed, (ECF No. 38). The parties consented to the undersigned on August 30, 2022, and the case was re-assigned accordingly. (ECF Nos. 47, 48.)

This Court issued an Order on March 24, 2023, dismissing the Second, Third, and Fifth counts of Plaintiff's Second Amended Complaint with prejudice, and denying Defendants' motions to dismiss as to the First and Fourth counts with leave to renew (ECF No. 49). With respect to Plaintiff's state law claims (the First and Fourth counts), this Court granted Plaintiff limited leave to replead facts supporting diversity jurisdiction, *i.e.,* the citizenship of the parties and the amount in controversy. (*Id.*) Following this Court's March 24, 2023 Order, Plaintiff advised the Court that it intended to amend the complaint as to the remaining state law claims to the extent permitted in the Court's March 24, 2023 Order, (ECF No. 51), and the Court subsequently directed Plaintiff to file the amended complaint by May 19, 2023, (*see* Electronic Order dated May 9, 2023).

On May 18, 2023, Plaintiff filed a Third Amended Complaint, (ECF No. 52), which the Court found did not remedy the jurisdictional defects previously outlined by the Court, (*see* Electronic Order Dated May 24, 2023; ECF No. 49). The Court additionally determined Plaintiff's Third Amended Complaint "appear[ed] to re-assert the Second, Third, and Fifth causes of action" from Plaintiff's Second Amended Complaint, "which were 'dismissed with prejudice, and without leave to replead.'" (*See* Electronic Order dated June 2, 2023; ECF No. 49.) This Court determined Plaintiff was "barred from using [its] amended pleading to revive claims that were previously dismissed with prejudice or without leave to amend[,]" struck the Second, Third, and Fifth causes of action, and directed Plaintiff to file a Fourth Amended Complaint removing the causes of action that were dismissed previously. (*Id.*)

On June 7, 2023, Plaintiff filed its Fourth Amended Complaint against Defendants, asserting: (1) breach of civil contract; and (2) intentional interference with rights of contract, and alleging $3,750,000 in damages, including: (i) "loss of revenue from the participants in Plaintiff's program who had committed to participate in the Club National[;]" (ii) "loss of rating by exclusion from the Club National," which made Plaintiff "less desirable to the persons interested in participating in travel lacrosse" and therefore "consequential lost tuition payments[;]" (iii) "loss of scouting opportunity" which "made Plaintiff's program less desirable[,] causing participants to leave the program and causing consequential lost tuition payments[;]" (iv) damages the "reputation of the program in the eyes of the interested public in youth travel lacrosse causing consequential lost tuition payments[;]" and (v) "loss of revenue from the participants in Plaintiff's program who had committed to travel to Florida with Plaintiff." (ECF No. 59.)

On September 22, 2023, Defendants moved to dismiss Plaintiff's Fourth Amended

Complaint in its entirety with prejudice and without the right to replead, or, in the alternative, requested an Order: "(a) dismissing Plaintiff's Counts One and Two against Individual Defendants Mike Gabel, Jake Deane, Michael Brennan, Tracey Cantabene, Thomas Zummo, and Cabel Maddux, and (b) striking Plaintiff's prayer for punitive damages." (*See* ECF Nos. 63–65). That same day, Plaintiff filed its Memorandum of Law in Opposition to Defendant's Motion to Dismiss, (ECF No. 66) (hereafter, "Plaintiff's Opposition"), and Defendants filed their Reply, (ECF No. 67) (hereafter, "Defendants' Reply").

## II.   DISCUSSION

### A.   Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–

57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. *Id.*

### B. Documents Considered Under Rule 12(b)(6)

It is well settled that in deciding a motion to dismiss under Rule 12(b)(6), a court can consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters of which judicial notice may be taken. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002). Even if a document is not incorporated by reference, a court may nevertheless consider it when it is "integral" to the complaint, meaning the complaint relies heavily upon its terms and effect. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, it must be clear on the record that there is no dispute as to the document's authenticity, accuracy, or relevance. *Id.*

Here, Plaintiff in its Fourth Amended Complaint has stated that on May 3, 2021, "Defendant and Plaintiff entered into an agreement in writing on the Club National website," which "a copy is hereto annexed, marked 'Exhibit A' and made part of this Complaint." (ECF No. 59 at ¶ 47.) However, Plaintiff did not attach an "Exhibit A," or any Exhibit, to its Fourth Amended Complaint. (*See id.*) In its Opposition to Defendant's Motion to Dismiss, Plaintiff

attached screenshots of Club National's website "Payments Options and Discounts" page, "Shopping Cart" Page, and payment page filled out by Radar (hereafter, "Radar's Payment Documents"). (*See* ECF No. 66 at 51–52.) In its Opposition, Plaintiff additionally attached email chains between, *inter alia*, Plaintiff's Director of Events, Scott Heaney ("Heaney"), and Madlax, Inc.'s Director Tracey Cantabene ("Cantabene"), (*see id.* at 61–66), and between, *inter alia*, Heaney, and individual defendants, Deane and Maddux, (*see id.* at 68–72), (collectively, the "Email Chains"). Radar's Payment Documents and the Email Chains form the basis of Plaintiff's breach of contract and interreference claims, their content is integral to Fourth Amended Complaint, and their authenticity is undisputed. Accordingly, the Court considers Radar's Payment Documents and the Email Chains.

In their Declaration in Support of their Motion to Dismiss (ECF No. 64), Defendants attached the Terms and Conditions for registration for Club National listed on their website (ECF No. 64-17, Ex. Q). Plaintiff claims these were not present when it registered for the tournament. *See* ECF No. 59 at ¶ 55 ("The Club National website did not provide for any other conditions for participation in the tournament other than payment."). As this Court previously acknowledged, "[t]he document appears to be a screenshot taken from a computer, and the date reflected on the computer is November 29, 2021, which is after Plaintiff registered for the tournament on May 3, 2021." (ECF No. 49.) Given this dispute, the Court excludes it from consideration on this motion, as it did with Defendant's previous motion to dismiss. (*Id.*) The affidavits Plaintiff offers in its Opposition to supplement the Complaint, (*see* ECF No. 66), are also excluded. *See Colliton v. Bunt*, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016) ("Courts ordinarily do not consider factual assertions contained in affidavits submitted in . . . opposition to

a motion to dismiss . . . . Moreover, a plaintiff generally may not amend its complaint through its opposition to a motion to dismiss.") (citation omitted).

## C.  <u>Choice of Law</u>

As a preliminary matter, this Court notes that New York law applies to Plaintiff's breach of contract and tortious inference with contract claims. "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). For contract disputes where there is no applicable choice-of-law clause, New York courts apply a "center of gravity" approach, considering "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties*." Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030–31 (2d Cir. 1996), *cert denied*, 519 U.S. 1116 (1997). However, "[a] party can waive a choice-of-law argument."  *Reed Constr. Data Inc. v. McGraw-Hill Companies Inc*., 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014). Here, both parties applied New York law in their motion papers. (*See* ECF Nos. 65, 66.)  Thus, the parties have waived any choice-of-law argument, and the Court proceeds under New York law.  *See Santalucia v. Sebright Transp., Inc*., 232 F.3d 293, 296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this dispute, and such 'implied consent . . . is sufficient to establish choice of law'") (internal citations omitted).

## D.  <u>Breach of Contract Claim</u>

In their Motion to Dismiss, Defendants assert that Plaintiff failed to state a plausible claim of breach of contract because: (i) Plaintiff cannot show a contract was formed; and (ii) Plaintiff has failed to allege breach. (ECF No. 65 at 10.) First, Defendants argue that while Plaintiff alleges that registering for the Club National tournament via the website formed a

contract, Plaintiff provides no specificity with respect to the terms of the alleged contract and

with whom the contract was formed. (*Id.*) Second, even if this Court finds a contract was formed,

Defendants argue Plaintiff does not allege that any specific clause of the alleged contract was

breached. (*Id.* at 11.) Defendants further argue Plaintiff "ignores the conspicuously posted Terms

and Conditions on Club National's website, in which it explicitly indicates that participation is

subject to approval." (*Id.* at 11–12.) They claim Plaintiff "failed to review the Terms and

Conditions before registering." (*Id.* at 12.)

In response, Plaintiff argues that a "simple" "pay-for-play" contract was formed between

the parties, in that Plaintiff paid on Club National's website to participate in the tournament, and

Defendants therefore were required to allow Plaintiff's teams to play. (ECF No. 66 at 24.) In

failing to allow Plaintiff's team to participate in the tournament, Plaintiff argues Defendant

breached the alleged agreement. *See id.* at 22 ("A simple contract is breached when the plaintiff

advances payment requested, and defendant refuses to provide the service or product or benefit

bargained for."). Plaintiff further argues that the Terms and Conditions on Club National's

website were not known to it, and therefore not binding.[1] (*Id.*) As previously mentioned, the

Court will consider the Radar Payment Documents and the Email Chains attached to Plaintiff's

Opposition. (*See infra*, II.B.) The Radar Payment Documents, in relevant part, show the price of

registration and method of payment options for the Club National Tournament. (*See* ECF No. 66

at 51.) They additionally show Radar Sports attempted to make a payment of $2,569.25 on the

---

[1] In its Opposition, Plaintiff suggests Defendants added Terms and Conditions to the Club National website *after* Plaintiff had already registered for the tournament. *See id*. at 66 ("[T]he defendants' claim of conditions is fallacious. The contract on the date plaintiff visited defendant's website did not have the conditions and provisions website had none of the conditions which would have entitled defendants to back out of the deal. That there is now conditions not there when RADAR made its payment is interesting, perhaps even expected. Defendants cannot turn The Club National from an open competition to one ladened with provisos added retroactively by reverse engineering with the wisdom of hindsight.").

Club National website. (*Id.* at 51–52.) The Email Chains between Cantabene and Heaney, dated

May 3, 2021, state the following:

> Cantabene:   Hi Scott! MDLX is about to go full-court press on our fall marketing efforts and wanted to reach out. Since National Lacrosse Club participated last year, I wanted to give you an opportunity to reserve your spot at the 2022 Club Nationals. . . we know this year the tournament will max out. Click on the links above for registration. Remember, lock in your space now and pay later! Visit our website (hyperlinked) for detailed event information or contact me with questions.

> Heaney:   Good afternoon, I just went in to register 6 teams. The reason for this email to check . . . how discounts are supposed to be applied.

(*Id.* at 61.)

In the Email Chain between Maddux and Heaney, dated September 20, 2021, Maddux

informs Heaney:

> "Unfortunately, our ownership group has voted to refund Nationals LC in full $3,271 for the Club Nationals. We also cancelled all future auto payments. Now we also need to cancel hotel reservations in your block? None of the families have been charged so there are no refunds necessary. We apologize but for the reasons outline in the email below and in your conversations with Tom Zummo and Jake Deane, we must take this course of action. . . [w]e hold nothing against you personally as you seem to be stuck in the middle of a business model that we deemed not acceptable for our event. You can expect to see that refund hit your books within 2-3 days."

(*Id.* at 69.) Attached to the email is a "Refund Receipt" in the total amount of $3,271. (*Id.*)

In their Reply to Plaintiff's Opposition, Defendants argue Plaintiff's claim that

Defendants "manufactured terms and conditions of the alleged contract *after the fact* purportedly

to protect themselves from the alleged breach of contract that is now set forth in the Complaint"

is "preposterous" and "not alleged in the Complaint." (ECF No. 67 at 6.) Even accepting

Plaintiff's allegations in the opposition as true, and "assuming that this was a pay-to-play

contract," Defendants claim Plaintiff "fails to set forth how Defendants allegedly breached the

12

contract identified in the Complaint" and "Plaintiff does not allege that any specific clause of the alleged contract was breached." (*Id.*)

To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff; (3) defendant's breach; and (4) damages resulting from the breach. *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (2nd Dep't, App. Div. 2013); *see also Edwards v. Sequoia Fund, Inc*., 938 F.3d 8, 12 (2d Cir. 2019).  Although "[a] plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim," the complaint must, at a minimum, "set forth the terms of the agreement upon which liability is predicated . . . by express reference."  *Vanderbilt Minerals v. Sub-Tech., Inc.*, 2019 U.S. Dist. LEXIS 174323 (N.D.N.Y. Oct. 8, 2019); *see also Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't, App. Div. 1995) (holding the trial court properly dismissed plaintiff's amended complaint asserting breach of a contract where plaintiff "failed to allege, in nonconclusory language, as required, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability [was] predicated"); *Brooklyn 13th St. Holding Corp. v. Nextel of New York, Inc*., No. 11-CV-1048 (CBA) (RLM), 2011 WL 6945862, at *3 (E.D.N.Y. Dec. 30, 2011), *aff'd*, 495 F. App'x 112 (2d Cir. 2012) ("In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.").

Despite being given *four* opportunities to amend its Complaint (*see,* e.g., ECF Nos. 1, 5, 23, 52, 59), Plaintiff has failed to provide the Court with a copy of its alleged contract with Defendants and does not cite to any of its alleged terms that Defendant was in breach of. Plaintiff simply alleges: (i) it "entered into an electronic contract with Defendants, by signing up for Club National through the Club National website and by paying the registration fee," (ECF No. 59 at

¶¶ 51, 57); (ii) "Defendants agreed to admit Plaintiff's teams into the tournament," (*id.* at ¶ 56); and (iii) on September 20, 2021, Defendants "breached the contract," (*id.* at ¶ 62), but fails to plead any additional facts in support of its assertions.

Breach of contract claims based on conclusory allegations that a breach occurred cannot withstand a motion to dismiss. *See Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 115 (S.D.N.Y. 2021) ("A breach of contract claim cannot rest on a conclusory statement that the defendant breached a contract"); *Barlow v. Gov't Emps. Ins. Co.*, 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at *3 (E.D.N.Y. Sept. 29, 2020) ("A complaint alleging a breach-of-contract must 'identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached.'") (quoting *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)).

The only documents Plaintiff submits in support of its breach of contract claim are the Radar Payment Documents and the Email Chains. After examination of both documents, the Complaint, and Plaintiff's Opposition, the Court concludes that Plaintiff has failed to plausibly allege it formed a contract with Defendants.

Under New York law, the formation of a binding contract requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State DOT*, 715 N.E.2d 1050, 1053 (N.Y. 1999); *Utica Builders, LLC v. Collins*, 110 N.Y.S.3d 49 (2nd Dep't, App. Div. 2019) (courts look to basic elements of offer and acceptance to determine whether there is objective meeting of the minds). The internet "has not fundamentally changed the principals of contract." *Register.com, Inc. v. Verio, Inc*., 256 F.3d 393, 403 (2d Cir. 2004).

Here, the Email Chains exchanged between Cantabene and Heaney show Defendants sent

Plaintiff a marketing email, informing Plaintiff about the Club National Tournament and giving Plaintiff the opportunity to register. (ECF No. 66 at 61.) The email directed Plaintiff to the Club National website link for further questions, and never guaranteed Plaintiff a spot in the tournament upon payment. The Radar Payment Documents do not show any "Terms and Conditions" presented to Plaintiff for Plaintiff to accept, and only show Plaintiff's attempted submission of a payment. (ECF No. 66 at 51–52.) These documents are not enough to show an objective meeting of the minds between the parties. Rather, Defendants' email constituted a mere offer to make a unilateral contract, not a unilateral contract itself.[2]

   *Papa v. New York Tel. Co*., 529 N.E.2d 512 (N.Y. 1988), is illustrative. In *Papa*, the plaintiff signed a form seeking placements of ads in the defendant's phone book. *Id.* at 880. The defendant's form provided that omission from the phone book was to be deemed a rejection of the requested order. *Id.* The ads were not run, and the money that plaintiff paid was refunded. *Id.* The plaintiff sued for contractual violations to recover damages for the loss of profits in its business. *Id.* at 881. The Court held:

> By its explicit terms, the order form made acceptance conditional upon publication and allowed for unilateral cancellation by [plaintiff] as well. The order form therefore constituted a mere offer to make a unilateral contract. The fact that the offer was made on the [defendant's] preprinted forms does not transform the order form into a bilateral contract. The mere expectation that a contract will be entered into does not constitute a contract. Because a unilateral contract is unenforceable until acted upon by the promise, [plaintiff's] contract claims were properly dismissed by both lower courts.

*Id.* (internal citations omitted);  *see also E. Meadow Driving Sch., Inc. v. Bell Atl. Yellow Pages Co*., 708 N.Y.S.2d 701, 702 (2nd Dep't, App. Div. 2000) (holding the same); *Kentucky Fried*

---

[2] A unilateral contract is one that is not binding until it is acted upon by the offeree. *See*, e.g., *Brooklyn 13th St. Holding Corp.,* 2011 WL 6945862, at *4 (emphasis added) (holding a letter agreement whereby defendant was at most required to, "*consider* moving or raising" plaintiff's equipment, was "in fact a unilateral contract whereby plaintiff was required to reimburse defendant should defendant undertake the requested relocation).

*Chicken of Middletown, Inc. v. Rockland Lease Funding Corp.*, 570 N.Y.S.2d 404 (3rd Dep't, App. Div. 1991) (holding restaurant and equipment lessor failed to reach meeting of minds on issue of collateral needed to secure lease and, therefore, there was no binding contract, as the letter from lessor established nothing more than conditions to be fulfilled before lease could be approved, parties never resolved issue of collateral to secure lease, and lessor never signed lease); *U & B Properties, Ltd. v. Aries Design Mgmt., Inc.*, 791 N.Y.S.2d 874 (Sup. Ct., N.Y., 2004) (finding letter proposal constituted an offer to make a unilateral contract).

Similarly, in *Amalfitano v. NBTY Inc.*, 9 N.Y.S.3d 352 (2nd Dep't, App. Div. 2015), the defendants offered to provide to visitors to their website who entered their email address a $1 coupon toward the purchase of their products and further promotional materials. The plaintiff asserted that he provided his email address to the defendants in response to this promotion, but did not receive the $1 coupon as promised, and brought a breach of contract claim against defendants. *Id.* at 354. The Court explained the online promotion did not constitute an offer – "[r]ather, it constituted only an invitation for offers, in light of the fact that the promotion expressly stated that the supply of coupons was 'limited[,]'" and held the promotion "did not create the power of acceptance for consumers and, consequently, no unilateral contract was formed." *Id.*

Likewise, in *McCabe v. ConAgra Foods, Inc.*, 681 F. App'x 82 (2d Cir. 2017), the Second Circuit reached the same conclusion with similar facts. In *McCabe*, ConAgra Foods, Inc. ("ConAgra") conducted an annual promotion to help end child hunger from 2011 to 2015, in which company would donate a certain amount (up to a yearly maximum) to a non-profit organization called Feeding America for every code entered on its website from certain ConAgra products' packaging. *Id.* at 83. McCabe filed suit in the Eastern District of New York, alleging

16

that ConAgra's promotion created a contract. *Id.* The Court held a unilateral contract was not formed, reasoning that the promotion was limited to a certain maximum donation per year, "[a]n individual entering a code would have no knowledge whether the maximum donation had been reached in 2011, 2012, 2013, or 2014, and therefore, "ConAgra's promotion was not an offer because McCabe and the other plaintiffs had no power of acceptance." *Id.* at 84 (internal citations omitted).

Here, as in *Papa* and *McCabe*, Plaintiff and Defendant never reached a meeting of the minds required for the formation of a contract. Defendant provided Plaintiff with the opportunity to register for Club National to be considered for a spot in the tournament, and warned Plaintiff that there were a limited number of spots. (*See* ECF No. 66 at 61.) Defendants never guaranteed a spot in the tournament to Plaintiff upon receipt of payment. (*See* ECF No. 66 at 61.) As Plaintiff has openly acknowledged, it never agreed to a set of terms and conditions before submitting payment to register, (*see* ECF No. 66 at 22–23), and therefore lacked "the power of acceptance." *McCabe v. ConAgra Foods, Inc*., 681 F. App'x at 84.[3] Similar to the *Papa* and *McCabe* line of cases, Defendants allowed for unilateral cancellation and provided Plaintiff with a refund when they chose not to admit Plaintiff into the tournament. (*See* ECF No. 66 at 69.) As such, Plaintiff makes no factual allegations that support a finding of a contractual agreement, either oral or written between the parties, and "without a contractual relationship, there can be no

---

[3] In an Oral Argument held on November 1, 2023, Plaintiff maintained that it did not see the Terms and Conditions on the Club National website prior to registration for the tournament. (*See* ECF No. 68.) The Second Circuit has been unwilling to infer assent based merely on Terms posted on a website or accessible from a mobile app absent objective evidence that a party knew of the terms. *See Starke v. Squaretrade, Inc*., 913 F.3d 279, 292-97 (2d Cir. 2019) (holding an arbitration provision in post-transaction Terms & Conditions unenforceable because the plaintiff was not provided with reasonable notice); *see also Specht v. Netscape Communications Corp.*, 306 F.3d 17, 22-24 (2d Cir. 2002) (declining to enforce an arbitration provision Netscape's Terms and Conditions on its website and finding assent lacking where users of Netscape's website were unaware that the free software was provided subject to terms).

alleged breach." *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 CIV. 0133(GBD), 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004).

Even if Plaintiff has sufficiently alleged the existence of an agreement, Plaintiff still fails to allege damages. "The general rule for measuring damages for breach of contract has long been settled. It is the amount necessary to put the plaintiff in the same economic position he would have been in had the Defendant fulfilled the contract." *Topnotch Tennis Tours, LLC v. Global Tennis Connections Ltd*., 2016 U.S. Dist. LEXIS 44946 (E.D.N.Y. Mar. 30, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 69756 (E.D.N.Y. May 25, 2016); *Oparaji v. Mun. Credit Union*, 2020 U.S. Dist. LEXIS 242211 (S.D.N.Y. Dec. 21, 2022) (Under New York law, "damages arising from contract claims must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract") (internal citations omitted). Thus, "[w]here a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order." *Id.* at 19. (internal citations omitted).

For example, in *Oparaji*, the plaintiff's breach of contract claim was premised on the defendant charging his account for overdraft fees. *Oparaji*, 2020 U.S. Dist. LEXIS 242211, at *17. The defendant provided evidence that it refunded the entire amount before the complaint was filed. *Id.* at *19. Even assuming a contract existed, the court dismissed the claims as moot because there were no "reasonably certain" damages. *Id.* at *18.

Here, like the defendant in *Oparaji*, Defendants refunded Plaintiff for the full amount Plaintiff paid to register for Club National. (*See* ECF No. 66 at 69.) Plaintiff's other alleged contractual damages, including: (i) "loss of revenue from the participants in Plaintiff's program

who had committed to participate in the Club National[;]" (ii) "loss of rating by exclusion from the Club National," which made Plaintiff "less desirable to the persons interested in participating in travel lacrosse" and therefore "consequential lost tuition payments[;]" (iii) "loss of scouting opportunity" which "made Plaintiff's program less desirable[,] causing participants to leave the program causing consequential lost tuition payments[;]" and (iv) damages the "reputation of the program in the eyes of the interested public in youth travel lacrosse causing consequential lost tuition payments," (*see* ECF No. 59), are speculative at best, and Plaintiff does not otherwise provide any evidence or plead any facts sufficient to demonstrate these alleged damages.

Accordingly, this Court concludes that Plaintiff has failed to adequately plead a claim for breach of contract under Rule 12(b)(6).

### E. **Intentional Interference Claim**

In support of its intentional interference with contract claim, Plaintiff alleges: (i) it "entered into an agreement with Avanti to reserve a block of hotel rooms for Plaintiff's teams for Club National" (ECF No. 59 at ¶ 73); and (ii) and on or about October 8, 2021, Maddux "contacted Avanti and had them cancel Plaintiff's hotel reservations," (*id.* at ¶ 74), and later "expressed" to Plaintiff that the reason the rooms were cancelled was because the tournament was "filled up," (*id.* at ¶ 65.).

In their Motion to Dismiss, Defendants argue that Plaintiff fails to allege the required elements of the claim because it requires the conduct be without reasonable justification. (*See* ECF No. 65 at 13.) Defendants' further assert their conduct was a courtesy to Plaintiff by procuring a refund because the Plaintiff was not permitted to play in the tournament. (*Id.*) In response, Plaintiff argues that Defendants interfered with its plans to go to Orlando, Florida, (*see* ECF No. 66 at 11), and that there are many attractions in Orlando Plaintiff could have visited.

(*id.*)  Further, Plaintiff argues there were damages because other exhibitions could have been played in Orlando that weekend, and Plaintiff lost revenue from its ability to recruit and retain players.  (*Id.* at 13–14.)  In their reply, Defendants identify that Plaintiff is alleging that it was visiting Orlando regardless of whether it had teams playing at Club National for the first time in its motion papers— it is nowhere in the Complaint.  (*See* ECF No. 67 at 3.) Defendants further argue that Plaintiff fails to allege that all other hotels were booked, or that it could not get other accommodations at a similar price.  (*Id.*)

To establish intentional interference with contract under New York law, a plaintiff must show: (1) "the existence of a valid contract between the plaintiff and a third party[;]" (2) "defendant's knowledge of that contract[;]" (3) "defendant's intentional procurement of the third-party's breach of the contract without justification[;]" (4) "actual breach of the contract[;]" and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996). The New York Court of Appeals has elsewhere explained:

> [T]he degree of protection available to a plaintiff for a competitor's tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights. Thus, where there is an existing, enforceable contract and a defendant's deliberate interreference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.

*NBT Bancorp v. Fleet/Norstar Fin. Group*, 664 N.E.2d 492, 496 (N.Y. 1996).  But "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights," a plaintiff "must show more culpable conduct on the part of the defendant." *Id.* To this end, even though "the contract-based claim carries a lesser culpability requirement than the more general business-relations claim, the contract-based claim is strictly 'defined by the nature of the plaintiff's enforceable legal rights.'" *Conte v. Emmons*, 895 F.3d 168, 172 (2d Cir. 2018) (quoting *NBT Bancorp*, 664 N.E.2d at 496).

20

Pursuant to this standard, "a plaintiff must identify the third-party contract with which the defendant allegedly interfered." *MMS Trading Co. PTY Ltd v. Hutton Toys, LLC*, 2021 U.S. Dist. LEXIS 60376, at * 35 (E.D.N.Y. Mar. 29, 2021).  This requires details about the formation of the contract, the date the contract was formed, and the contract's major terms.  *See id.* (collecting cases). At the outset, the Court acknowledges that Plaintiff has not provided any details about the formation of the contract with Avanti, including its terms, (*see* ECF No. 59 ¶¶ 73–75), and finds its pleading deficient on that ground alone. *See Loaki Holdings, LLC v. Twin Tiger USA, LLC*, 306 F. Supp. 3d 629, 643 (S.D.N.Y. 2018) ("Merely pleading the existence of a contract is insufficient . . . . [A] plaintiff must provide enough details to allege the existence of a binding contract with a third party.") However, Defendants neither dispute that a contract existed between Plaintiff and Avanti (hereafter, the "Avanti Contract"), (*see* ECF No. 65 at 13), nor that they had knowledge of the Avanti Contract, (*see id.*), and, therefore, the Court will only address the third and fifth elements—intentional procurement of a breach without reasonable justification and damages—that are in dispute.

"[T]he intentional procurement of a breach element requires a plaintiff to establish that but for the allegedly tortious conduct of the defendant, the third party would not have breach [its] contract." *Prepaid Ventures, Ltd. v. Compton*, 2022 U.S. Dist. LEXIS 230077 (E.D.N.Y. Dec. 21, 2022).  In determining whether interference with a contract was justified, the New York Court of Appeals considers: "the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which the defendant interferes, the interests the defendant seeks to advance, the social interests at stake, the proximity of the defendant's conduct to the interference, and the relations between the parties." *Jews for Jesus, Inc. v. Jewish Community Relations Counsel, Inc.*, 968 F.2d 286 (2d Cir. 1992).

First, Plaintiff has not adequately plead facts supporting intentional interference with its rights under the Avanti Contract because the Avanti Contract was terminable at will. Plaintiff was allowed to cancel the Avanti Contract for a full refund if it wished, and Defendant informed Plaintiff of that in the Email Chain between Maddux and Heaney. On September 20, 2021, Maddux informed Heaney: "Unfortunately, our ownership group has voted to refund Nationals LC in full $3,271 for the Club Nationals. We also cancelled all future auto payments. Now we also need to cancel hotel reservations in your block? None of the families have been charged so there are no refunds necessary." *See* ECF No. 66 at 69; *see also SING for Serv., LLC v. DOWC Admin. Servs., LLC*, 2022 U.S. Dist. LEXIS 771, at *65 (S.D.N.Y. Jan. 3, 2022) ("DOWC has not pleaded a claim for tortious interference with the Service Contracts because they are terminable at will by purchasers; hence, DOWC cannot demonstrate that their cancellation by purchasers constitutes a breach of contract."); *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 2-cv-1363, 2003 U.S. Dist. LEXIS 8594, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (collecting cases) ("A contract terminable at will cannot be the basis for a tortious interference with contract claim.").

Second, there is evidence present in the Email Chains suggesting that Defendants have a stake in Avanti's business—that is, Defendants have a deal with Avanti in which Avanti provides hotel rooms for Club National Participants.[4] As such, because Defendants were aware that Plaintiffs were not going to participate in Club National, and they were aware that Club National spots were "filled up," they had reasonable justification for cancelling the Avanti

---

[4] The business relationship between Defendants and Avanti was confirmed in Oral Argument. *See* ECF No. 68. Specifically, Defendants confirmed that Club National reserves a "block of rooms" at a specific hotel through Avanti, a travel agency, which are "designated for participants of the tournament[,]" in order for those participants "to stay together" (*Id.*) Defendants maintain they cancelled Plaintiff's hotel reservation for that specific block of rooms because Plaintiff was "no longer admitted to the tournament" at the time of cancellation. (*Id.*)

Contract. *See Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2019 U.S. Dist. LEXIS 56635 (S.D.N.Y. Mar. 28, 2019) ("[U]nder a broader economic justification commonly referred to as the economic interest defense, New York law allows a defendant to avoid liability for tortious interference with contract if the defendant act[s] to protect its own legal or financial stake in the breaching party's business") (internal citations omitted); *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (1st Dep't, App Div. 1990) ("It is well established that only a *stranger* to a contract, such as a third party, can be liable for tortious interference with a contract.") (emphasis added). To this end, not only has Plaintiff ignored the business relationship between Defendant and Avanti, but it has also failed to adequately plead the third element of this claim.

With respect to damages, "the elements, including consequential damages, [are] those recognized under the more liberal rules applicable to tort actions.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 128 (2d Cir. 2019) (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 453 n.6 (N.Y. 1980)). "One who is liable to another for interference with a contract . . . is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Id.* (quoting Restatement (Second) of Torts § 774A(1) (1979)) (ellipses in original).

However, the damages must be "damages resulting" from the tortious interference with the contract. *Lama Holding*, 88 N.Y.2d at 424. Here, Plaintiff asserts "[t]he damages suffered . . . included loss of revenue from the participants in Plaintiff's program who had committed to participate in the Club National to wit $750,000." (ECF No. 59 at ¶ 77.) These damages are the

23

exact same that Plaintiff asserted in its breach of contract claim.[5]  (ECF No. 59 at ¶ 68.) Plaintiff

does not assert any damages resulting from Defendant's interference with the Avanti Contract –

for example, Plaintiff does not allege it incurred cancellation fees, nor does not allege it could

not procure another hotel room at a similar rate. (*See* ECF No. 59 ¶¶ 72–77.) Rather, Plaintiff

argues in its Opposition that it is "in the business of making money from exhibitions as well as

competitions" and that "[w]ithout these exhibitions, [it] lost the revenue from an important

holiday season."  (ECF No. 66 at 14.)

In short, Plaintiff's claimed damages arise from not being able to participate in the Club

National tournament. They do not arise from Defendants' purported interference with the Avanti

Contract. Therefore, Plaintiff has not adequately pled a claim for intentional interference with the

rights of a contract under New York law and Rule 12(b)(6). Accordingly, this Court concludes

Plaintiff's breach of contract and intentional interference claims should be dismissed.

## F.  Punitive Damages

In their Motion to Dismiss, Defendants request Plaintiff's claim for punitive damages in

its Third Amended Complaint ("TAC") be stricken from the record under Fed. R. Civ. P.

12(f).  (ECF No. 65 at 16–17.)  Plaintiff's TAC included a claim for $5,000,000 each on Counts

I, II, III, and V, as well as "exemplary damages in the amount of Five Million Dollars

($5,000,000)."  (*See* ECF No. 52 at 13–14.) However, in its Fourth Amended Complaint,

Plaintiff that claim for exemplary damages is absent. *See* ECF No. 59 at 10.  As such, this Court

declines to address Plaintiff's prior punitive damages claim, since an amended pleading

supersedes all prior pleadings. *See International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d

Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original

---

[5] Plaintiff conceded in Oral Argument that the damages alleged in its tortious interference claim are identical to the damages alleged in its breach of contract claim. *See* ECF No. 68.

and renders it of no legal effect") (citing *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884)), and notes it would have otherwise been dismissed even if considered. *See New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (emphasizing that punitive damages for breach of contract is only available "if necessary to vindicate a public right"); *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 94 (2d Cir. 2005) (holding the same).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.[6] Accordingly, Plaintiff's Fourth Amended Complaint is dismissed in its entirety with prejudice and without the right to replead.[7]

Dated:  Central Islip, New York
   November 2, 2023

          **SO ORDERED**.

          /s/ *James M. Wicks*
           JAMES M. WICKS
         United States Magistrate Judge

---

[6] As Plaintiff's breach of contract and tortious interference claims against Club National lack merit, the Court need not consider whether individual defendants should be dismissed independently. *See Weissman v. Seiyu, Ltd.*, 2000 U.S. Dist. LEXIS 509, at *22-23 (S.D.N.Y. Jan. 14, 2000) (collecting cases applying New York law, holding in a breach of contract claim, a plaintiff must plead that the joint venture is unable to satisfy an obligation before it can bring a cause of action against the individual members of the joint venture).

[7] In general, Courts will allow Plaintiffs to amend their Complaint when granting a motion to dismiss. *See e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).  However, the Court "may properly deny leave to amend where there is evidence of . . . repeated failure to cure deficiencies by amendments previously allowed . . . [or] futility."  *Pappanikolaou v. New York City*, 2005 U.S. Dist. LEXIS 39201, at *680 (E.D.N.Y. July 14, 2005). As previously mentioned, Plaintiff has had numerous chances to cure the deficiencies in its Complaint (*see, e.g.*, ECF Nos. 1, 5, 23, 52, 59), and has failed to provide the Court with a copy of its alleged contract with Defendants and cite to any of its alleged terms that Defendant was in breach of. Therefore, although Plaintiff has not requested it (*see* ECF No. 59), the Court finds amendment would be futile at this juncture and denies Plaintiff the right to replead.